Brinkerhoee, J.
The first assignment of error, set forth in the petition, is, that the court below erred in not awarding to the contestants the affirmative of the issue presented and tried, and in not thus permitting them, in argument, to open and close the case.
The ruling of the court below on this point was right; as has since been expressly decided by this court in Brown v. Griffiths, 11 Ohio St. Rep. 329.
The second assignment of error is, that the court below erred in allowing the witness, John Welsh, to detail conversations with defendant, Anthony Banning, not asked for by them (the contestants), and .to which they objected.
That part of the testimony of John Welsh, here excepted to, as given in the bill of exceptions, is as follows:
“Contestants then called on John Welsh, who testified that a few days after the death of old Mr. Banning, might have been before the funeral, he saw Anthony, the contestant, at the farm, when he told him, that he understood from his mother, that there was a will, but it did not give him control of his property. And he said if it was so, it should not stand, and mother said it should not stand. Witness, then voluntarily stated another conversation, that he had with *444 Anthony some three days after, in which Anthony told him, that there was a will, and it gave him a large amount of prop erty, and gave him the control thereof. This last conversation was objected to by the contestants, as they had not asked the witness for that conversation, and did not choose to go into it, but the court decided that it might go the jury; to which contestants excepted.”
From this statement in the bill of exceptions, it would seem that the witness, being called by counsel for the contestants, and in response to some questions put by them, proceeded to state what he had heard the contestee, Anthony Banning, jr., say, a few days after his father’s death, in respect to his father’s will, and what his mother had told him about it. Thus far the testimony of the witness seems to have been directly called out by counsel for the contestants. The witness, then, being still in the hands of counsel for the contestants, of his own accord, proceeded to detail other declarations made by Anthony Banning, jr., a few days afterward, and on precisely the same subject, but tending to neutralize the effect of the declaration made on the first occasion, by showing that his information and impressions in respect to the will were different on the last, from what they had been on the first interview with the witness. The witness seems to have proceeded with his statement of the last conversation without interruption by counsel on either side, and when the character of the second conversation was fully disclosed, then, and not till then, the counsel who were engaged in the examination of the witness objected to the last conversation. We think the court properly refused to interfere with the testimony. It will hardly do to permit counsel, having a witness under examination in chief, and having called for the declarations of a party on a particular subject matter, to experiment, by their acquiescence, upon a voluntary statement by the witness of other declarations by the same party, upon the same subject matter, until they find that the volunteer statements of the witness are not likely to benefit them; and then to interpose their objections. Beside, it is difficult to see how these declarations of young Anthony, professedly *445 based throughout on information derived from his mother, were of any importance whatever, or could have influenced the finding of the jury one way or the other.
The third and sixth assignments of errors are based upon exceptions to the charge of the court below to the jury, and its refusals and modifications of charges, requested by the contestants, in respect to the effect, when given in evidence, of the record of the will, as established and admitted to probate ; and especially in respect to the effect of that record upon the onus probandi in the then pending contest.
In order to pass, intelligently, upon the questions made by these assignments of error, it is necessary to look to the provisions of our statutes bearing upon the subject; and we give them here, in order' that the charges, given, refused, and modified, may be scanned in the light which they furnish. They are found in sections 47, 48, 49 and 50, of the act of May 8, 1852, “relating to wills,” etc. (3 Curwen, 1910), and in the twenty-second section of the same act, 3 Curwen, 1904. These sections are as follows :
“ Sec. 47. That the several courts of probate within this state, shall have full power and authority to admit to probate, any last will and testament which such court may be satisfied was duly executed according to the provisions of the act upon that subject, in force at the time of the execution of such last will and testament, and not revoked at the death of the testator, where such original will has been lost, spoliated, or destroyed, subsequently to the death of such testator, and can not be produced in court in as full, ample, and complete a manner, as such courts now admit to probate last wills and testaments, the originals of which are actually produced in court for probate.
“ Sec. 48. In all cases where application shall be hereafter made to the probate court, to admit to probate a will duly executed as aforesaid, and which has been lost, spoliated, or destroyed, as aforesaid, it shall he the duty of the party seeking to prove the same, to give a written notice to all persons whose interest it may be to resist the probate, and who reside in the county where the testator resided at the time of his *446 death, or to their agent or attorney, five days before the day on which such proof is to be made, or to give notice, hy publication in a newspaper printed in the county, thirty days before the day set for hearing such proof.
“ Sec. 49. In all such cases, the said court shall cause the witnesses to such will so executed and lost, spoliated or destroyed, and not revoked, and such other witnesses as any person interested in having such will admitted to probate may desire, to come before such court, and said witnesses shall be examined by said probate judge, and their testimony reduced to writing, and filed by him in his court; Provided, that in all cases where it may be necessary so to do, in consequence of witnesses residing out of the jurisdiction of said court, or who reside within such jurisdiction and who are infirm or unable to attend court, the court may order the testimony of such witnesses to be taken and reduced to writing by some competent person, which testimony shall also be filed in such probate court.
“ Sec. 50. If the court, upon such proof, shall be satisfied that such last will and testament was duly executed in the mode provided by the law in force at the time of the execution, that the contents thereof are substantially proven, and that the same was unrevoked at the death of the testator, and has been lost, spoliated or destroyed, subsequently to the death of such testator, such court shall find and establish the contents of such will, as near as the same can be ascertained, and cause the same, and the testimony taken in the case, to be recorded in said court.
“ Sec. 51. The contents of any such last will and testament so found, established, and admitted to probate, as aforesaid, shall be as effectual to pass real and personal estate, .and/or all other purposes, as if the original will had been admitted to probate and record, according to the provisions of this act; and such wills shall, in all respects, be governed by the laws in force relating to other wills, not only as relates to the contest of the same, but in all other matters.”
The twentieth and twenty-first sections of the act provide for a contest of a will after the same has been admitted to *447 probate, and that an issue’ shall be made up, as was done in this case, “ whether the writing produced be the last will of the testator or not.” Then follows the twenty-second section, which, is as follows :
“The order of probate shall be prima facie evidence, on the trial of said issue, of the due attestation, execution and validity of said will.”
The general charge of the court to the jury was as fol- ' lows:
“ That in a proceeding like the present, upon the trial of an issue to contest a will which had been regularly admitted to probate by the probate court of the proper county, under the laws of this state, the order of probate is prima facie evidence of the due attestation, execution and validity of such will, which latter term also embraces the contents of the will. That after the contestee had given in evidence a copy of the will so admitted to probate, regularly certified from the records of the probate court, together with the order of probate thereon in due form, if no other or further proofs were given in respect to the will or its contents, it being shown that the original will was destroyed after the death of the testator, without the fault of contestee, the contestee would be entitled to their verdict, and the contestors were called upon in order to sustain their claim that the will so admitted to probate was not the last will and testament of the deceased, to prove by legitimate testimony to the satisfaction of the jury that the will so admitted to probate was not in substance the will of the deceased. That it was not enough for the contestors, by their proof, to render it doubtful or uncertain whether the will admitted to probate was the will left by the deceased, but they must go further, and by their proof satisfy the minds of the jury by a preponderance of evidence that it was not in substance his will. If the proofs ’adduced, either by the one side or the other, satisfied them that the will as admitted to probate contained devises that were not in the will left by the deceased, and read in the hearing and presence of the family, or omitted devises that were contained therein, then the will so admitted to probate was not the will of the *448 deceased, and they should so find. If, on the contrary, the proofs failed to satisfy them that such was the case, then by their verdict they should find accordingly.”
We can see no error in this charge. It seems to us that it states the law clearly and correctly. The statute is express that “the order of probate shall be prima facie evidence,” etc., of the “validity of said will;” that is, the will as established and admitted to probate. The establishment and probate of a spoliated will is no idle ceremony, no matter of mere form, no ex parte proceeding; but, on the contrary, it is a proceeding on full notice, affording ample opportunity for contest. In that proceeding the party seeking to establish the will holds the laboring oar. On him devolves the task affirmatively to establish, not only the due execution and attestation of a will, but, in all respects, the validity, and the contents, substantially, of the will. The burden thus far rests upon him. And when he has accomplished the task thus thrown upon him, shall he be held to have made no progress ? The statute is not only express, but it is wise in its provisions. After a spoliated will has been thus established, a mere doubt — a mere balance of evidence — ought not to overthrow it. And the validity of a will reduced to writing and recorded, is inseparable from its contents. The contents of a will constitute the will itself.
The contestants requested the court to charge the jury: “ That a mere prima facie case, such as the statute in cases of wills raises, at least so far as the contents of wills are concerned, in cases where it appears that the will was established upon oral proof of its contents, should have no other effect than to put the party contesting upon proof of its contents by some legitimate competent testimony. That after such testimony has been adduced on the part of the party denying the will, tending to show it was not the will, it then becomes a question of the preponderance of proof; and if the party seeking to sustain, claims he has better proof, and withholds it, no presumption will be raised in favor of the will as set up in the probate court.”
This proposition, as a whole, was inconsistent with the *449 general charge, and the court properly declined to give it in charge to the jury; and so far as the latter clause of the proposition embraced what was correct, it was given, in compliance with the next instruction requested by contestants, to-wit: “That by the laws of Ohio there could be no legal proof adduced before the probate court which may not legitimately be adduced before the jury, to enable the)n to know what the contents of the true will really were. If, then, the will set up by the probate court differs in substantive bequests from the proof adduced before them legally, and believed by them to be credible, they must render their virdict on the strength of the proofs adduced.” • This charge the court gave with the, following explanation: “ Provided that the proof satisfied them that the will, as admitted to probate, differs in substance from the will which was spoliated.”
A further charge was requested as follows: “ That after legal and credible proof is adduced against the will, the prima facie case raised by mere presumption in its favor, is destroyed, and the question then becomes a question of preponderance of proof, which the jury must settle by the evidence regularly delivered before them.” The court charged that this was the law, subject to the limitation and proviso before charged.
The contestants asked the court further to charge the jury, “that if the claim be set up by the party seeking to sustain the will, that better proof was adduced before the probate court, to enable that court to set up the will, and withhold said proof on the trial of this issue, the presumption is against such proof existing, and against the probate court having any such proof to support the will probated by it.” In reply to this request, the court remarked : “ We have nothing to do with the proof before the probate court, except so far as the same has been given in evidence here, and the statute makes that proof evidence here.”
Finally, on this branch of the case, the contestants requested the court to give in charge to the jury the following; “ That if there be found in the will probated substantial bequests which the proof [does not sustain or] shows were not in ' *450 the written will, or if there be bequests omitted which the proof shows were in the paper left by the testator as his will, that then they should find against the will.” This proposition, as a whole, the court declined to charge; but struck out the words included in brackets, and charged what remained.
In all the action of the court on these several requests of the contestants, we are unable to see any ground of just exception. The court and jury, on the trial of this contest, really had nothing to do with the proof before the probate court. There may have been more proof to sustain the will' before the probate court than there was in this contest, from the death, removal to parts unknown, or the insanity of witnesses, or from the natural decay or failure of their memory; or from the confidence of the contestees in the strength of their prima facie case; or there may have been less proof in the probate court to sustain the will than there was on this contest. How this was, one way or the other, was not a proper subject of inquiry on this contest. Counsel might, properly enough, and probably did, argue to the jury upon presumptions of fact arising out of these considerations ; but we do not see how they gave rise to any presumptions of law which the court was in duty bound to give in charge to the jury. And as to the modifications made by the court, of the other charges requested by the contestants, they were neces^ sary to render them consistent with the general charge first given, and in order to secure to the contestees the full and fair benefit of the prima facie case which the statute awarded to them, on the ground of the establishment and probate of the "will.
To understand the application of that part of the charge of the court to which exception is taken in the fifth assignment of error, a few words of explanation are necessary.
By recurring to the will as admitted to probate, it will be seen that it gives to young Anthony Banning the “ Click farm, so called.” The extent and boundaries of this farm, as owned by the testator at the time of the execution of the will, were well known, and capable of being readily identified. But it appeared in evidence that, between the time of execut *451 ing his will and the time of his death, the testator purchased from one Peter Davis a tract of thirty-five acres of land adjoining the “ Click farm.” The probate judge, in reducing to record his finding of the contents of the will, undertook to give the specific boundaries of the “ Click farm,” as devised to young Anthony. And the contestants, on the trial of this case, in order to overthrow the will as admitted to probate by showing that it contained a devise which could not have entered into the mind of the testator at the time his will was executed, contended that the boundaries of the “ Click farm,” as set forth in the will as admitted to probate, included this thirty-five acre tract acquired by the testator after the execution'of his will; while counsel for the contestee, young Anthony Banning, disclaimed the devise thus sought to be thrust upon him, and contended that the boundaries mentioned in the established will did not include this tract.
Now, by a reference to the boundaries given in the will as established, and comparing them with a plat of the premises given in evidence and embodied in the bill of exceptions, it is evident that the probate judge, in attempting .to give the boundaries of the “ Click farm.” as it was known to be when the will was executed, made a mistake. Those boundaries do not accurately describe the “ Click farm;” and they neither clearly include, nor clearly exclude, the after-acquired Peter Davis tract of thirty-five acres.
Such being the state of case apparent in the evidence, the court charged the jury thus : “ That when the description in a deed or will was so ambiguous .in its terms as to render it impossible to identify the property intended to be passed thereby, to that extent such deed or will would be inoperative and void for uncertainty; but that when a description was to some extent ambiguous, but was reasonably and fairly susceptible of two constructions, one of which would sustain, and the other destroy the instrument, it was the duty of the jury to adopt such construction as would sustain, rather than that which would destroy it: and that in the present case, if they found there was some degree of ambiguity in the description of the Click farm devised by the will, as found by *452 the probate judge, but this description when fairly construed, was susceptible of two constructions, one of which would render it invalid, and the other give effect to it, it was their duty to adopt the latter construction.”
We see no error in this charge. “ The Click farm, so called,” having been devised to young Anthony, this was itself a sufficient description, under which the extent of the devise could have been readily identified; and a superadded inaccurate description would not vitiate the devise. Falsa demonstratio non nocet. Broom’s L. M. 490.
Having now, in substance at least, passed.on all the other assignments of error, -we proceed to consider the fourth and ninth, which are, that the court below erred “ in the charge to the jury as to the seven acres purchased of Mr. Norton, after the execution of the will,” and “in allowing the declarations of Anthony Banning, the testator, to be given in evidence to sustain the will.”
The judge who presided at the trial of the case in the district court, being in doubt as to the correctness of his rulings there on these points, himself granted leave to file the petition in error in this court; and these are the only points in the case in respect to which any of us have found any difficulty here;
The language of the will as established by the probate court, so far as it relates to these points, is this:
“ It gave to Anthony Banning, jr., the Click farm, so called, situate in Clinton township, Knox county, Ohio, one mile and a half southwest of Mt. Yernon, together with a piece of land attached to said farm, and bought by testator of D. S. Norton as an outlet to said farm.” ■
It appeared in evidence, and is not disputed, that the fee of this piece of land, comprising in quantity about seven acres, was bought and acquired by the testator from Norton, after the execution of the will. And it was a leading point made by the contestants on the trial, that the including of this after-acquired land in the devise to young Anthony, established such a material and substantial variance between the will *453 actually made by the testator, and the will admitted to probate, as to work an avoidance of the latter.
The 48th section of the “ act relating to wills,” in force when this will took effect, 1 Curwen, 691, provides, that “ any estate, right, or interest, in lands or personal estate, or other property acquired by the testator after the making of his will, shall pass thereby, in'like manner as if held or possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator.”
The testimony of John Welsh, referred to in the assignments ef error, as stated in the bill of exceptions, is as follows : “ On cross-examination witness testified that [when] he moved on his farm adjoining the Click farm, there was no outlet to the Click farm without crossing land belonging to others; that the customary outlet to that farm, was across the seven acres bought of Mr. Norton, and had been used for that purpose for many years before Judge Banning purchased the fee simple of Mr. Norton. On one occasion witness had a conversation with old Mr. Banning, in which the latter said, that he had long intended to buy that strip of Norton, and attach it to the Click farm for an outlet; that he had bought the seven acres for that purpose; that before he bought it he had been trying for many years to buy it for an outlet to the Click farm; that Mr. Norton knew that it was the only outlet to the farm and asked him a high price for it. Old gentleman told him in 1839 or 1841, that he had been desirous of putting Anthony’s share of the estate where he could not squander it. [The declarations of Anthony Banning, dec’d, as stated by this witness, were objected to by contestants, and objection overruled by. court; excepted to by contestants. No objection by contestants as to order of time, when said testimony was given.]
“ On examination witness states that there was more land purchased from Norton than was necessary for right of way ; that the approach to the Click farm had generally been along the west line of said strip; that the buildings on the Click farm were located near the line next the outlet purchased from *454 Norton. Judge Banning did not say he had made a contract ' for said piece before he bought it, he said he had had the use of it for crossing before, and had tried to buy it, but Mr. Norton held it too high; the ground on the northeast corner of the Click farm was so swampy and wet, that it was almost impossible to get on or off the farm, on that part, but the northwest corner was solid and firm, and a good place for an outlet. The improvements on the Click farm were on the northwest corner.”
After another witness had been called and examined, 44 John Welsh was then recalled, and stated that there were improvements made on the northwest corner of the Click farm, and part of them being a small house for the tenant, were made.on the Norton piece, after the purchase; that there had been no other way to get on the farm until about five years since. No road existed at the time Mr. Banning made the’ purchase or before that time, except the one across the Norton land at the northwest corner ; the body of the cleared land in Mr. Banning’s lifetime was on the west side of the Click run; ford on northwest corner generally good; upper one never so good. It was admitted by the counsel for contestants, that the deceased in his lifetime, for some years before his death, had and enjoyed an easement in the seven acres purchased of Norton, as right of way to the Click farm.”
The testimony embodied in the bill of exceptions establishes the fact beyond controversy, that the 44 Click farm ” had no convenient access to any public road except through this seven-acre strip bought from Norton ; and it was admitted on the trial that the testator had, for many years prior to his purchase of the fee, an easement of a right of way over this strip. A reference to the plat of the premises shows that this strip lies very nearly in the shape of a boot; the sole resting upon the north line of the original 4‘ Click farm,” adjoining its northwest corner; the top of the leg extending to the road; the back part of the heel and leg resting upon the 44 Bevens farm;” and the forepart of the foot and leg curving along near the bank of a considerable stream running through, the lands of Norton, from off which this strip was taken. *455 And it is evident, from its locality and conformation, and detached as it is, by means of the stream, from the main body of Norton’s land, that this strip is of little value except as an outlet and inlet to the “ Click farm.” Such being the extrinsic facts of the case relating to the point under consideration, the court charged the jury: “ That if by the true will it clearly appeared to be the testator’s intention to pass the said seven acres, the title to which was acquired after the date of the will from Norton, it would be sufficient in law to pass such after-acquired property. Or, if they found from the testimony that prior to the date of the will the deceased possessed an easement in said seven-acre tract and used it in connection with the Click farm, and if they found that at that date he had formed an intention to purchase the fee simple of said seven acres, and of attaching it to the Click farm and making it a part thereof, and did afterward, in pursuance of such intention, purchase the fee simple, and use, and treat it as part of said farm, it would pass as part of the Click farm, notwithstanding it was purchased after the will was made. That to aid them in arriving at the testator’s intention in regard to this seven-acre tract, they might take into consideration the fact as testified to by John Welsh, that the deceased had said he always intended to purchase that piece of land as an outlet to the Click farm, and any other testimony tending to show said intention which had been adduced. That if they found either of the above state of facts to exist, it was no substantial departure from the original will for the probate judge to find that said seven-acre tract passed by the will with the Click farm, for such in law would be the effect upon the death of the testator.”
We are not satisfied that the court below was right in admitting the testimony of John Welsh, as to the oral declarations of the testator in respect to his intention to purchase the strip and annex it to the “ Click farm on the contrary, we think the court below was wrong; for, under the provisions of the statute, the intention to pass after-acquired property must “ appear by the will.” But, the contestants have, by their bill of exceptions, brought all the evidence in the case *456 upon tbe record, and it is open to inspection before us. It is our right and our- duty to construe the will in the light of the circumstances surrounding the testator when the will was made; and to place ourselves upon the standpoint which he then occupied. And we are also bound to look to the rule of judgment in regard to spoliated wills, which the statute either prescribes or implies. And if, under the light of these circumstances — under this statutory guidance — and upon view of all the evidence in the case aside from that excepted to — ■ we are satisfied that the verdict was right, it is our duty to let it stand.
It is a rule of judicial policy in England to lean in favor of the heir as against the devisee. But such is not the policy in Ohio. Smith v. Jones, 4 Ohio Rep. 116. Looking, then, to the circumstances under which the will was made; considering that the ownership of this strip of land was so necessary to the full and permanent enjoyment of the “ Click farm that the easement of a right of way over it was already attached to the “ Click farm;” and that, while it was all important to the owner of the “ Click farm,” it was of little value to any one else; it seems to us that the jury were justified in finding “ by the will,” and from the will, that it was the intention of the testator that whatever estate or right he might have in this strip, whether easement or fee simple, should pass with the “ Click farm ” to his devisee.
Again, it seems to us that this devise may well be sustained on another ground. It is not every variance between the will as made, and the will as established after spoliation, that will avoid the latter. The statute only requires that the v contents ” of the spoliated will shall be “ substantially proven,” and that the “ probate court shall find and establish the contents of such will as near as the same can be ascertained;” and provides that “ the contents of any such last will and testament so found, established, and admitted to probate, shall be as effectual, etc., for all purposes, as if the original will had been admitted to probate and record.” It is not to be denied that the spirit of this statute is, to some extent, in odium spoliatoris; and it seems to us that, in order to render the reme *457 lies at all practical and effective, it is proper that it should be administered somewhat in the same spirit. And looking to the quantity and conformation of this strip of land, its location in respect to adjoining lands, and considering the slight difference in value between a right .of way over it, and a fee simple estate in it, we are of opinion that the variance is not sufficient, under the provisions and policy of the statute, to avoid the will as established and admitted to probate.
Judgment affirmed.
Suture, O.J., and.Peck, Gholson and Scott, J J., concurred.